UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

BRIAN KATZENBERGER,
Debtor.
_________________________________________/

Case No. 24-21033-dob
Chapter 7 Proceeding
Hon. Daniel S. Opperman

DESIRAE DUPUIS and MICHAEL DUPUIS,

Plaintiffs,

v.

Adversary Proceeding
Case No. 24-2033-dob

BRIAN KATZENBERGER,

Defendant.
_________________________________________/

# TRIAL OPINION

## Introduction

Plaintiffs Desirae Dupuis and Michael Dupuis commenced an adversary proceeding on November 15, 2024 against Defendant Brian Katzenberger, the Debtor in this Chapter 7 bankruptcy. Plaintiffs object to the dischargeability of debt owed to them under 11 U.S.C. § 523(a)(6), and object to Defendant's discharge under 11 U.S.C. § 727(a)(4)(A) and (a)(4)(D). Defendant denies these allegations and argues that any amount that he may owe Plaintiffs is discharged and further that he is entitled to a discharge pursuant to Section 727. For the reasons stated in this Opinion, the Court finds and holds that Plaintiffs have not met their burden of proof on all counts.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts), and 28 U.S.C. § 157(b)(2)(J) (objections to discharges).

## Findings of Fact

The Court makes the following findings of fact based upon the testimony of 7 witnesses and 14 Exhibits. In addition to Plaintiffs and Defendant, Plaintiff called Ashley Sargent and Josh Schmitt as witnesses, and Defendant called Officer Bill Doran and Samuel Sweet, Chapter 7 Trustee, as witnesses. The trial of this adversary proceeding was held over two days.

The underlying facts occurred in December 2022. Plaintiffs are father and daughter. Defendant and Plaintiff Desirae Dupuis were in a relationship for a period of years prior and had two children together. The parties had lived together at 3016 Eddy Street, Saginaw, Michigan 48604 (the "Property"), which was owned solely by Plaintiff Desirae Dupuis during this time. Plaintiff Desirae Dupuis vacated the Property in the fall of 2022 after she and Defendant had a falling out. During this time, Ms. Dupuis continued to operate a daycare business from the Property. On December 14, 2022, a physical altercation occurred between Defendant and Plaintiff Michael Dupuis at the Property, in which Mr. Dupuis suffered physical injuries. The parties disagree as to the circumstances surrounding this incident. A police officer was present during this incident, and a police report was prepared. After this incident, Defendant changed the locks to the Property from December 14, 2022 to December 28, 2022, which prohibited Plaintiff Desirae Dupuis from any access.

Plaintiff Desirae Dupuis eventually regained possession of the Property after Defendant was removed by the Carrolton Police Department. Ms. Dupuis asserts that Defendant caused significant damage to the Property and incurred a large bill for utility services from Consumers Energy in her name during his sole occupancy of the Property. Defendant disputes this.

On December 30, 2022, Defendant filed a Verified Complaint in state court against Plaintiffs, asking that court: to determine his interest in the Property; to enforce his interest in the Property under the doctrines of promissory estoppel, equitable estoppel and unjust enrichment; to award damages due to Plaintiff Desirae Dupuis' alleged fraudulent misrepresentations concerning the Property; and to regain possession of the Property under the Michigan Anit-Lockout Statute, MCL § 600.2918. In his request for relief, Defendant sought a fifty percent interest in the Property or an award of equivalent monetary damages to make him whole.

In response, Plaintiffs filed Counterclaims, asserting counts of: statutory conversion under MCL § 600.2919(A); unjust enrichment; negligence/property damage; civil assault and battery; violation of the MCL § 600.2918 (Anti-Lockout Statute); and Tortious Interference with Existing Business Relationships. After a motion for partial summary disposition was filed by Plaintiffs in the state court action, the state court entered an Opinion and Order on January 4, 2024 Granting in Part and Deferring in Part Plaintiff's Motion. Specifically, the state court granted summary disposition in favor of Plaintiffs, dismissing Defendant's count seeking specific performance of an alleged oral contract granting him any interest in the Property. The state court awarded reasonable attorney fees to Plaintiffs for defending this count, and reserved the issue of the appropriate amount. The state court also granted summary disposition to Plaintiffs, dismissing Defendant's Anti-Lockout count, finding that there was no unlawful interference with Defendant's possession of the Property. Finally, the state court determined that

Plaintiff's request for summary disposition on Defendant's *lis pendens* claim was premature for procedural reasons.

Defendant filed a Chapter 7 bankruptcy on August 16, 2024. On his Schedule F, listing non-priority unsecured creditors and claim amounts, Defendant lists Plaintiff Desirae Dupuis with a claim for "Other" of $48,000.00 and Plaintiff Michael Dupuis with a claim for "Other . . . possible cause of action" of $0.00. Defendant disclosed the pendency of the state court lawsuit in response to Question 9 on his Statement of Financial Affairs. Plaintiffs commenced this Adversary Proceeding on November 15, 2024, seeking a determination of dischargeability of the debt owing to them, as well as an objection to Defendant's Chapter 7 discharge.

Specifically, Plaintiffs seek a determination that the debts they claim Defendant owes them are nondischargeable pursuant to 11 U.S.C. § 523(a)(6) due to Defendant's alleged willful and malicious conduct in converting certain jointly owned personal property for his own use. Plaintiffs also assert that Defendant willfully and maliciously damaged both personal property of Plaintiff Desirae Dupuis as well as damage to the Property itself by intentionally causing physical damage to the Property due to alleged actions of Defendant, including: destruction of sump pump causing flooding in the Property's basement; destruction of window blinds; destruction of carpets by Defendant's dog; and purposeful incurring of large Consumers Energy bills on a meter in Ms. Dupuis' name. Ms. Dupuis asserts that under Michigan's Anti-Lockout statute, she was unlawfully evicted by being denied access to the Property from December 14, 2022 to December 28, 2022, when Defendant changed the locks, which prevented her from enjoying use of the Property personally and in order to operate her daycare business. Plaintiff Michael Dupuis argues that Defendant's physical actions on December 14, 2022 caused him to suffer physical injuries and ongoing medical attention resulting in monetary damages. Finally,

both Plaintiffs claim joint damages for the sanctions awarded by the state court to them against Defendant for what they characterize as frivolous claims brought against them in state court. Plaintiffs assert a value of sanctions of $43,233.63, which should be deemed nondischargeable.

Plaintiffs further argue that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A) because he knowingly made a false oath or account in connection with his bankruptcy case by undervaluing two business ownership interests. Specifically, Plaintiffs assert that the $0.05 value for Defendant's five percent interest in Oteal2, LLC, and $1.00 for his 100% ownership interest in Mid Michigan Genetics and Consulting, LLC, are both greatly undervalued. Also, Plaintiffs assert that Defendant listed personal property and claims valued at $65,000 in the 2022 state court action, but failed to list such in his 2024 bankruptcy Schedules or other bankruptcy filings.

A second basis for denial of discharge is asserted by Plaintiffs under 11 U.S.C. § 727(a)(4)(D), which denies a discharge when a debtor "knowingly or fraudulently" withholds information and other documentation from an officer of the estate. Here, Plaintiffs again argue that Defendant did not disclose the personal property and claims in his bankruptcy, which were previously disclosed in the state court action.

Defendant responds denying these assertions, and if true, do not amount to willful and malicious conduct, nor do such provide a basis for denial of discharge. Specifically, Defendant denies causing any damage to the Property, and he denies that he converted any personal property of Plaintiff Desirae Dupuis. He denies he ever deprived Plaintiff Desirae Dupuis access to the Property, including access to run her daycare business. As to any allegations concerning the physical altercation with Plaintiff Michael Dupuis, Defendant asserts he acted in self-defense only. He denies any sanctions had been decided by the state court, nor do such constitute willful

and malicious conduct. Finally, as to the Section 727 counts, Defendant claims he provided all documentation to his bankruptcy trustee, who was satisfied all property and claims were disclosed and all values provided on his Schedules were accurate.

The parties' testimony corroborates these positions to a degree, but not completely. At trial before this Court, Plaintiff Michael Dupuis testified as to the physical altercation that occurred on December 14, 2022. Mr. Dupuis stated he went to the Property after Ms. Dupuis asked him to do so because Ms. Dupuis was in distress. Mr. Dupuis testified that Ms. Dupuis made him aware that a police officer was present at the Property. When he entered the Property, he stated he leaned against the sink in the kitchen, and Defendant and Police Officer Bill Doran were seated on the couch. Mr. Dupuis testified that he had his hands in his pockets, and Defendant approached him unprovoked. He testified that Defendant "headbutted" him, which caused Mr. Dupuis to fall unconscious to the ground. Mr. Dupuis was later taken to the hospital by a family member. Mr. Dupuis testified that he had a swollen cheek and had two teeth extracted. He testified that he also suffered from and continues to suffer from nightmares as a result of this incident. Mr. Dupuis testified that Defendant was arrested for this occurrence. Mr. Dupuis testified that he and Defendant had a physical altercation twenty-five years ago.

Regarding the Property, Mr. Dupuis testified that the next time he was at the house was December 28, 2022, when he changed the locks. Mr. Dupuis noted that the house was "pretty rough" due to dog waste, a flooded basement, holes in the walls, and molding that had been removed/ripped off. Mr. Dupuis testified that the state of the house had changed between December 14, 2022 and December 28, 2022.

Ms. Dupuis also testified at trial. Ms. Dupuis has a different version of the events on December 14, 2022. Ms. Dupuis testified that Defendant approached Mr. Dupuis, headbutted

him, then punched him. She stated that she got in front of Defendant at one point and additional police officers arrived, "but it was kind of a blur for awhile." Ms. Dupuis testified that when she regained possession of the Property on December 28, 2022, the Property was in "terrible" shape, with holes in the walls, a flooded basement due to an unplugged sump pump, dog feces and urine stains everywhere, and overall messes. She testified that the total of the Consumers Energy bill, which she claimed Defendant had intentionally caused, totaled approximately $11,000.00. She testified that she had been in the home prior to December 14, 2022, and the state of disrepair was not present. Ms. Dupuis also testified that as to certain items of personal property connected with a marijuana grow business, siding equipment and tools which she claimed to jointly own with Defendant were missing and testified that it was her belief Defendant had converted such for his own use. Ms. Dupuis testified that this joint personal property was worth approximately $15,000 to $20,000.

Defendant testified that he believed he no longer had an interest in the personal property at issue when he filed his bankruptcy on August 16, 2024. He also testified that he abandoned any claims to property he had previously listed in the state court action. This personal property was not in his possession, and he felt he would not succeed in staking a claim to such. The values listed for such in the state court action were not accurate and were stated as if such were new. He testified that his bankruptcy Schedules as to all personal property were accurate, and amended his Schedules once to include guns inadvertently omitted originally. He owned these guns that were and are currently not in his possession, which he inadvertently forgot to list. Defendant further testified that any personal property he removed from the Property was solely owned by him and not jointly owned with Ms. Dupuis. As to the events occurring on December 14, 2022 with Mr. Dupuis, Defendant testified when Mr. Dupuis arrived, both he and Defendant

approached each other, and Mr. Dupuis approached him with closed fists at his side. Defendant testified that he was fearful of Mr. Dupuis generally. Defendant testified that he was fearful Mr. Dupuis was going to choke him like he had in 2013 when Mr. Dupuis attempted to choke him and struck him three to four times. Defendant further testified that he was fearful of Mr. Dupuis because he threatened Defendant physically outside of the Saginaw County Courthouse on September 29, 2022. Defendant testified that he did not headbutt Mr. Dupuis; rather, Mr. Dupuis pressed his head against his, and Defendant "head pushed" back in self-defense. He testified that Mr. Dupuis fell back and started to come at him with a right punch with a look of "anger and hatred" at which point Defendant hit Mr. Dupuis with a left punch. This punch is what knocked Mr. Dupuis to the ground. Defendant stated that this last punch was done in fear of Defendant's own personal safety.

In addition to the testimony of the parties, Plaintiffs' first witness, Ashley Sargent, testified on behalf of Plaintiffs. Ms. Sargent is an attorney who helped with licensing for Oteal2, LLC in 2022 for Jason Richardson, another member of this company. She testified that she has never had interactions with Defendant despite him listing her in his bankruptcy pleadings as a bookkeeper for Oteal2, LLC, and otherwise has no personal knowledge of the division of interests of the members of this entity. Ms. Sargent testified that she has limited knowledge of Plaintiff Desirae Dupuis' involvement or investment in this entity, but confirmed after reading the operating agreement for Oteal2, LLC that Ms. Dupuis was a member of the entity. She drafted a document effectuating Ms. Dupuis' termination with all relationship from the entity in 2023, confirmed that Ms. Dupuis was paid $25,000, which represented her initial investment in this entity. She testified that she has no knowledge about the circumstances surrounding the termination. She further testified that she had and has no involvement or knowledge in Mid

Michigan Genetics and Consulting, LLC, and has no idea why Defendant would have listed her as the accountant or bookkeeper for this entity. Ms. Sargent has no knowledge as to values given by Defendant in his Schedules for these entities or how such were arrived at.

Plaintiffs' second witness, Josh Schmitt, testified as a member and compliance person for Oteal2, LLC, and testified as to its tax returns for 2023 and 2024. Mr. Schmitt testified that this entity was purchased for $400,000 in the summer of 2022 and was comprised of an operating license. Mr. Schmitt does not have knowledge as to why Desirae terminated her relationship with Oteal2, LLC and received the sum of $25,000 for her four percent interest, and recalls she had some involvement with this entity. Mr. Schmitt was unable to confirm or deny the identity of, or amounts attributed to, the tangible and intangible assets of Oteal2, LLC on its tax documents. He also has no knowledge as to values given by Defendant in his Schedules for this entity, as well as for Mid Michigan Genetics and Consulting, LLC, a subcontractor for Oteal2, LLC, or how such were arrived at. He testified that he is not an accountant and cannot state for certain for tax purposes, but it is his view that the company is operating with an inability to service its debt load, and has never made a profit and will likely go out of business. He testified that Defendant may have stored personal property on the business property, but he could not identify such with certainty.

Defendant offered the testimony of Officer Bill Doran, with the Carrollton Police Department. Officer Doran testified that he has been a police officer for 48 years, 44 of those years with the Carrollton Police Department. Officer Doran was the sole police officer initially responding to the call for police assistance on December 14, 2022 at the Property. Officer Doran testified that he knew both Defendant and Plaintiff Ms. Dupuis, and upon his arrival, he sat down with both to calm them down. Ms. Dupuis had called Mr. Dupuis requesting that he come to the

Property to help her. Officer Doran testified that he spoke to Mr. Dupuis on Ms. Dupuis' phone telling him that he had the situation under control and that Mr. Dupuis need not come to the Property. Mr. Dupuis nevertheless arrived fifteen to twenty minutes later, despite Officer Doran's request not to do so. He and Defendant were in the kitchen, and Ms. Dupuis was in the living room. Officer Doran at this point asked Mr. Dupuis to leave the Property, and Mr. Dupuis did not respond to Officer Doran at this point. He testified that both Mr. Dupuis and Defendant appeared upset and approached each other. Mr. Dupuis started to take his jacket off, and both Defendant and Mr. Dupuis approached each other in the middle of the kitchen arguing and "chest bumping" each other. Officer Doran testified that "out of nowhere" Defendant "headbutted" Mr. Dupuis, causing Mr. Dupuis to fall backwards. Officer Doran could not testify as to whether Defendant felt threatened to the point that he had to headbutt Mr. Dupuis in self-defense because he could not read the mind of Defendant at the time.

Finally, Defendant offered Chapter 7 Trustee Samuel Sweet as a witness. Trustee Sweet testified that Defendant's Meeting of Creditors was continued twice and was concluded on the third meeting at which time Trustee Sweet satisfied himself he had all relevant documents and information from Defendant. Defendant's business did not look like it had much value, and it appeared to be in a "death spiral" with a short future. However, because it was connected with the sale of marijuana, he did not look further into the business as such a business is illegal under federal law. Trustee Sweet testified that he asks for bank statements, tax returns and balance sheets in order to determine if closely held entities such as the ones at issue in this case have any value. He testified that generally, bankruptcy debtors do not know for certain what these types of businesses are really worth. He testified that a small percentage interest such as Defendant's at the time have little or nominal value, and the fact that this was a marijuana business simplified

the analysis because in his experience these businesses are in a saturated market and are becoming or already are not profitable. Trustee Sweet testified that after he completed his investigation, he filed a report of no distribution, stating his conclusion that there was no doubt that Defendant's assets did not exceed any allowable exemptions under bankruptcy law.

Statement of Authorities

Objections to Discharge Generally under 11 U.S.C. § 727

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless an exception applies. Although exceptions to discharge are strictly construed against a creditor, *see Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 226 (W.D. Mich. 1997). Pursuant to Federal Rule of Bankruptcy Procedure 4005, the burden of proof in objecting to a discharge under Section 727 is on the plaintiff and must be established by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994).

11 U.S.C. § 727(a)(4)(A)—False Oath or Account

Section 727(a)(4)(A) bars a debtor's discharge if he knowingly and fraudulently makes a false oath or account in connection with the case. In order to prevail under § 727(a)(4)(A), a creditor must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *In re Zwirn*, 2005 WL 1978510 (Bankr. S.D. Fla 2005)(citations omitted).

The purpose of § 727(a)(4)(A) is to "ensure 'that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.'" *In re Bratcher,* 289 B.R. 205, 218 (Bankr. M.D. Fl. 2003)(*quoting Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987)). Section 727(a)(4)(A) ensures that adequate information is available to the case trustee and creditors without the need for examination or investigation to determine whether the information is true. *In re Craig,* 252 B.R. 822, 828-29 (Bankr. S.D. Fl. 2000). Debtors have a "paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects." *Craig,* 252 B.R. at 829 (internal quotation omitted). "Policy considerations mandate that the requirement to list all assets and liabilities is an absolute obligation of those seeking discharge of their debts." *Whitehead,* 278 B.R. 589, 594 (Bankr. M.D. Fl. 2002). "[A] debtor who fails to make a full and complete disclosure of relevant information places the right to the discharge in serious jeopardy." *Id.*

<u>11 U.S.C. § 727(a)(4)(D)—Withholding from Officer</u>

Section 727(a)(4)(D) of the Bankruptcy Code provides that the court shall grant a debtor a discharge unless,

> the debtor knowingly and fraudulently, in or in connection with the case - - withheld information from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

Under this section, the party objecting to discharge must show that:" (1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; (2) was in connection with the case; (3) was withheld from an officer of the estate entitled to possession; (4) was done knowingly and fraudulently; and (5) relates to the debtor's property or financial affairs." *In re Slocombe*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006).

Once the initial burden is met, "the Debtor must bring forth enough credible evidence to dissuade the court from exercising its discretion to deny debtor's discharge based upon the evidence presented by the objecting party." *Id.*, *citing* Fed. R. Bankr. P. 4005, and *Grant v. Sadler (In re Sadler)*, 282 B.R. 254 (Bankr. M.D. Fla. 2002).

<u>11 U.S.C. § 523(a)(6) - Willful and Malicious Injury</u>

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The United States Supreme Court has stated that a willful and malicious injury occurs only if "the actor intend[ed] 'the consequences of [the] act,' not simply 'the act itself'" and has held that debts arising from negligent or reckless conduct do not fall within the statutory exception. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 64 (1998) (quoting Restatement (Second) of Torts § 8A cmt. a (1964)); *see also Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 581 (6th Cir. 2001) ("only acts done with the intent to cause injury - and not merely acts done intentionally - rise to the level of willful and malicious injury") (citing *Geiger*, 523 U.S. at 61). In the Sixth Circuit Court of Appeals, the standard for determining whether the actor intended to cause the injury for purposes of § 523(a)(6) is whether the actor 1) desired to cause the consequences of his or her act, or 2) believed that the consequences are substantially certain to result from the act. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).

A willful and malicious injury "can be inferred through the circumstances surrounding the injury at issue." *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (citations omitted). However, the discharge exceptions are to be construed narrowly and in favor of the debtor. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999)). "The

party seeking the exception to discharge bears the burden of proof by a preponderance of the evidence." *Id.* at 306 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

## Analysis

A. Denial of Discharge—Section 727(a)(4)(A) and (a)(4)(D)

Plaintiffs assert that Defendant undervalued his interests in Oteal2, LLC and Mid Michigan Genetics and Consulting, LLC. The Court disagrees. Defendant testified that his interest in these entities was of no or nominal value. Nor does the testimony of Ashley Sargant, Josh Schmitt and Trustee Samuel Sweet contradict Defendant's testimony. The testimony from Ashley Sargent and Josh Schmitt both confirm that neither had knowledge of the value of Defendant's interest in these entities or what the overall value of each may have been at the time of his bankruptcy filing. Trustee Sweet further testified that he satisfied himself as to these values in his administration of the bankruptcy estate. While Trustee Sweet may have been analyzing the values from a liquidation value standpoint, he did not find Defendant's disclosed values to be so far off to be concerning. As recognized by Trustee Sweet, debtors such as Defendant are generally unsophisticated, which is further complicated by the uncertainty involved with marijuana businesses in recent years. The IRS Schedule K-1 Partnership tax forms for Defendant for Oteal2, LLC were admitted as exhibits, the testimony concerning such directly supports Defendant's assertation as the values given in his Schedules. Thus, these statements were not false for purposes of Section 727(a)(4)(A).

Plaintiffs also assert that Defendant failed to list personal property items totaling approximately $65,000 and his state court claims on his bankruptcy Schedules. Plaintiffs point to pleadings filed in the state court action regarding the personal property that are contrary to his

Schedules filed in his bankruptcy case. Mr. Schmitt's testimony regarding Defendant's personal property stored at the business was inconclusive, as he testified that while Defendant may have had some personal property stored there, he could not identify such and noted that personal property of all members of the LLC was intermingled. Trustee Sweet testified that he thoroughly investigated the allegations of undisclosed personal property and determined such was not owned by Defendant. Defendant's own testimony, while self-serving, credibly supported this conclusion. Defendant listed these items as claimed personal property, which he later abandoned any right to before filing his bankruptcy. The same holds true for all of his state court claims, which were abandoned as well.

As to all of these allegations, Trustee Sweet's testimony also dispels Plaintiffs' argument as to Section 727(a)(2)(D). Trustee Sweet testified that he was satisfied Defendant had provided all information requested concerning Defendant's property and financial affairs. The Court finds that Defendant did not withhold information from an officer of the estate. Thus, not one element under Section 727(a)(4)(D) has been established by Plaintiffs. The Court concludes that Plaintiffs have failed to meet their initial burden under Section 727(a)(4)(D).

B. Willful and Malicious Injuries—Section 523(a)(6)

Section 523(a)(6) actions require that the actor intend the consequences of the act. An accidental, negligent, or even reckless act alone will not suffice. Applied to this case, the Court finds that Plaintiffs have not met their burden of proving by a preponderance of the evidence that Defendant caused the damages alleged to have been suffered:

1. <u>Conversion of Property</u>

The testimony of Ms. Dupuis regarding Defendant's alleged conversion of certain items of personal property amounted to speculation. She was unable to state for certain which items of

jointly owned property were either at the business or at the Property. She testified that these items were jointly owned, but the Court cannot determine without verified inventories or titles of ownership who owned the personal property and what ultimately became of it. Defendant denies removing any property that was not solely owned by him. The Court concludes that with nothing more than the self-serving testimony of Ms. Dupuis in support of this contention, Plaintiffs have failed to meet their burden of proof that the property was converted by Defendant. Even if Defendant had converted the property, the evidence would still need to show that such was done with malicious intent under the case law cited above, which the Court concludes it does not so show.

2. Damage to the Property and Personal Property

Here again, Plaintiffs and Defendant each testified on their own behalf with regard to alleged damage to personal property and the Property itself. Ms. Dupuis testified that when she regained possession to the Property on December 28, 2022, she witnessed: destruction of and/or power turned off to the sump pump causing basement flooding; destruction of window blinds; destruction of carpets and a couch by Defendant's dog; destruction to walls and wall molding; and overall messes. Ms. Dupuis also testified that she believed Defendant willfully intended to cause a large power bill to result during this time period and took action to do so. Defendant testified that he did not cause this damage, nor was he the cause of the Consumer's Energy bill. He further testified that he never denied Ms. Dupuis access to the Property in which he, alone, could be the only person with access to explain the damages Ms. Dupuis asserts. The testimony of Mr. Dupuis and Officer Doran's as to the state of the Property on December 14, 2022 is inconclusive, as is Mr. Dupuis' testimony as to the state of the Property on December 28, 2022. Without more, the

Court is unable to determine the cause of the damages, let alone Defendant's state of mind with regard to such.

3. Lock Out

Ms. Dupuis testified that Defendant changed the locks to the Property during the time period December 14, 2022 to December 28, 2022, denying her access in violation of Michigan's Anti-Lockout Statute, MCL § 600.2928, as such deprived her of access to property she was rightfully entitled to occupy as the owner. Defendant denies that he did so, and that he remained in possession of the Property with the consent of Ms. Dupuis and as having a claim to ownership in the Property at the time. Defendant also testified that he did not intend to deprive Ms. Dupuis of access and use of the Property. Defendant's testimony is supported by his subsequent state court action in which he asserted an ownership interest in the Property. The Court finds Defendant's testimony credible and sincere in this belief and concludes that there was no willful and malicious intent on Defendant's part.

4. Altercation with Michael Dupuis

The testimony is consistent in that both Defendant and Mr. Dupuis were agitated, acted threateningly and did take physical actions toward one another on December 14, 2022. Plaintiff Michael Dupuis testified that Defendant was the instigator and aggressor of the physical encounter between them. Mr. Dupuis testified that he did nothing to cause Defendant to hit him. Defendant's testimony tells a different version of what transpired. Defendant testified that he felt threatened by Mr. Dupuis from the moment Mr. Dupuis entered the Property. This perspective was from Mr. Dupuis' past threatening and physical conduct toward him, as well as Mr. Dupuis' body language, facial expression and language that day. Ms. Dupuis and Officer Doran both

witnessed the encounter and testified that it appeared Defendant was the aggressor, but the perspective of Defendant is what must be considered for purposes of Section 523(a)(6).

An action by a debtor causing injury may be willful under Section 523(a)(6), but if undertaken in self-defense under applicable state law, such negates a finding of malice, thus defeating a nondischargeability claim under this subsection. *Juett v. Casciano (In re Casciano)*, 2016 WL 105926, at *6-7 (B.A.P. 6th Cir. Jan. 11, 2016). Under Michigan's Self-Defense Act, an individual has a right to use force in self-defense. This Act states, in pertinent part:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may us force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

MCL § 780.972(2).

The Court concludes that Defendant believed he was in imminent danger and acted to protect himself from great bodily harm in taking the physical actions against Mr. Dupuis, including his actions of a "head push"/"head butt" and the punch. Defendant's actions did cause physical damage to Plaintiff Michael Dupuis and were willful, because Defendant did intend to cause injury to Mr. Dupuis. However, the Court concludes that Defendant "honestly and reasonably believe[d] that the use of that force [was] necessary to defend himself . . . from the imminent unlawful use of force by [Mr. Dupuis]." This conclusion negates the presence of malice for purposes of Section 523(a)(6).

The Court does not reach this conclusion easily and acknowledges this conclusion is a close call. On one side, Mr. Dupuis was at the Property at the request of his daughter who owns the Property and wanted his assistance given the situation. Mr. Dupuis is older than Defendant and per his testimony he did not threaten or approach Defendant. Defendant, on the other hand,

testified that Mr. Dupuis did approach him, and he felt threatened given past experiences with Mr. Dupuis. In this Court's view, the testimony of Officer Doran tilts the decision slightly in favor of Defendant. Officer Doran asked Mr. Dupuis to not go to the Property because he had the situation under control and subsequently asked him to leave. While Defendant was eventually arrested for this incident, subsequent charges were not lodged. Moreover, Officer Doran's testimony was not strong for Plaintiffs. Given that the Michigan Self-Defense Act allows Defendant to act as he did and Plaintiffs' burden of proof, the Court concludes by the narrowest of margins that Defendant's obligation to Mr. Dupuis is dischargeable.

5. State Court Sanctions

Defendant testified credibly that he filed the state court action because he had a sincere belief that he had an ownership interest in the Property. Any sanctions awarded by the state court regarding that lawsuit are tied to this sincere belief. While Plaintiffs may have been injured monetarily by Defendant filing this action, such injury was not willful and certainly not malicious on Defendant's part. The injury of sanctions was not willful and certainly not malicious because Debtor's intent was to assert his ownership interest only.

For the above reasons and under the requirements of *Kawaauhau*, *Kennedy*, and *Markowitz*, these debts were either not proven to have been caused by Defendant, and if caused, were not willful and malicious for purposes of Section 523(a)(6). The Court finds that Plaintiffs have not met their burden of proof as to intent as required by Section 523(a)(6).

## Conclusion

For the reasons stated in this Opinion, the Court finds and concludes that Plaintiffs have not met their burden of proof pursuant to 11 U.S.C. § 523(a)(6), nor have they met their burden of proof under 11 U.S.C. § 727(a)(4)(A) and § 727(a)(4)(D). Accordingly, the debt owing by

Defendant to Plaintiffs is discharged, and with no other impediment to entry of a discharge in Defendant's bankruptcy case, a discharge shall enter forthwith.

**Not for Publication**

**Signed on September 30, 2026**

**/s/ Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**